**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| KEVIN HAZURE, JR., individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER UNIVERSITY OF LOUISIANA,<br><br>Defendant. | CIVIL ACTION NO.:<br>2:23-cv-00908-LMA-KWR<br><br>JUDGE LANCE M. AFRICK<br><br>MAGISTRATE KAREN WELLS ROBY |

**MEMORANDUM IN SUPPORT OF DEFENDANT XAVIER UNIVERISTY OF
LOUISIANA'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

**<u>TABLE OF CONTENTS</u>**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................3

        A.      The Incident ............................................................................................3

        B.      Plaintiff's Allegations ............................................................................3

III.    LEGAL STANDARD...........................................................................................4

        A.      Federal Rule of Civil Procedure 12(b)(1) .............................................4

        B.      Federal Rule of Civil Procedure 12(b)(6) .............................................5

        A.      Under Rule 12(b)(1), this Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks an Injury-in-Fact ....................................................................6

                1.      Plaintiff's Injury Theories—Assumed Increased Risk of Future Harm, Manufactured Mitigation Costs, Diminished Value of PII, and Unexplained Event/Assumed Fraud—Have Already Been Rejected By this Court Under Similar Circumstances...............................................6

                2.      The Overpayment Injury Theory Has Been Rejected by the Fifth Circuit .........................................................................................11

                3.      Plaintiff Does Not Have Standing Based on Anxiety Without Physical Injury...........................................................................................12

                4.      An Invasion of Privacy Does Not Support Standing ................................13

        B.      Under Rule 12(b)(6), Plaintiff Fails to State a Claim Upon Which Relief Can be Granted ..................................................................................................14

                1.      Plaintiff Does Not Plausibly Plead Any Cognizable Loss from the Incident ..........................................................................................14

                2.      Plaintiff's Claims Suffer Additional Defects ...........................................16

                        a.      Plaintiff fails to plausibly plead causation to state a claim for negligence ...................................................................................16

                        b.      Plaintiff fails to plausibly plead the existence of an enforceable contract or breach thereof...........................................................16

                        c.      Plaintiff fails to plausibly plead a claim for invasion of privacy...18

       d.    Plaintiff fails to plausibly plead a claim of unjust enrichment ......19

V.    CONCLUSION..................................................................................................20

Plaintiff Kevin Hazure, Jr. ("Plaintiff"), a former student of Defendant Xavier University of Louisiana ("Xavier"), alleges he received notice that his personal information may have been implicated in a recent cyberattack against Xavier.  Without any resulting injury, Plaintiff commenced this putative class action within days of receiving notice.  Accordingly, Xavier moves for dismissal of Plaintiff's Class Action Complaint (ECF No. 1, "CAC" or "Complaint") on two grounds.  First, this Court lacks subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), because Plaintiff fails to plead that he suffered an Article III injury-in-fact to confer standing to sue.  Second, Plaintiff fails to state a claim for relief, under Rule 12(b)(6), because he does not plausibly plead that he suffered any cognizable loss from this cyberattack, which is necessary to support his claims for damages; and his claims are besieged by other incurable and fatal defects.

In short, mere notice of a cyberattack does not automatically bestow an injury, much less a cognizable loss, on which to sue.  The Complaint should be dismissed.

## I.      INTRODUCTION

This putative class action arises from a data security incident (the "Incident") affecting Xavier and *possibly* involving Plaintiff's personal information.  On November 22, 2022, Xavier detected suspicious activity on its network; it immediately responded by isolating and securing its system.  Xavier investigated the Incident and determined that a criminal actor had gained access to its network, possibly including access to files containing certain student and vendor information. In February 2023, Xavier began notifying all individuals whose information may have been subject to unauthorized access during the Incident.  Plaintiff alleges he received such notice in early March and filed this suit on March 10, 2023.  But that is all.

Significantly, Plaintiff does not plead any specific injury or out-of-pocket loss due to the Incident.  He does not even plausibly plead any actual or attempted misuse of his personal information due to the Incident.  Instead, as has become commonplace in these cases, Plaintiff asserts various injury theories as wishful substitutes for appreciable harm.  He pleads that merely because the Incident occurred, he now faces an increased risk of future identity theft ("*Assumed Increased Risk of Future Harm Theory*").  And, as a corollary, he pleads manufactured mitigation costs in the form of lost time and other efforts spent (or to be spent) mitigating against such future harm ("*Manufactured Mitigation Costs Theory*").  In other words, Plaintiff speculates that someone *could* have his information and *may* misuse it in the future, and *if* that happens, he *might* have to spend time trying to address it.  Additionally, Plaintiff pleads that is personal data is worth less now that it is purportedly for sale on the dark web, as if Plaintiff had intended to sell his own data on the dark web ("*Diminished Value of Personal Information Theory*").  He pleads that he overpaid for services, as if an indeterminate portion of his tuition was implicitly allocated to an unspecified level of data security ("*Overpayment Theory*").  Plaintiff pleads his unexplained belief that an unquantified "drop" in his credit score could somehow be related to the Incident ("*Unexplained Event/Assumed Fraud Theory*").  Finally, Plaintiff complains of emotional distress and anxiety due to being notified of the Incident ("*Anxiety Theory*").

These theories are not plausible substitutes, however, for an Article III injury-in-fact to support standing.  Nor do they establish cognizable loss to support damages to withstand dismissal. In addition, Plaintiff fails to plausibly allege basic elements of his claims.  For negligence, Plaintiff fails to plead a loss proximately caused by Xavier.  For breach of implied contract, he does not (and cannot) allege the requisite mutual assent to, nor scope of, a purported agreement for data security between him and his former university.  For invasion of privacy, Plaintiff does not (and

cannot) allege that Xavier—a victim of an unwanted cyberattack—intentionally disclosed his personal information or seriously interfered with his privacy interests during the Incident. Finally, unjust enrichment is precluded by the availability of other pleaded remedies.

## II.    STATEMENT OF FACTS[1]

### A.    <u>The Incident</u>

On November 22, 2022, Xavier experienced a network disruption and immediately took steps to investigate the matter and engaged cybersecurity experts to assist with this process. (CAC ¶¶ 17, 18 n.2.)[2]  The investigation determined that, on January 24, 2023, a cybercriminal gained unauthorized access to Xavier's network and may have acquired certain student and vendor personal information, including names and Social Security numbers. (Ex. A; CAC ¶ 18.)  Xavier began notifying potentially affected individuals in early February 2023. (CAC ¶¶ 22, 98.)  Xavier also offered complimentary credit monitoring and identity protection services to notified individuals. (Ex. A; CAC ¶ 25.)

### B.    <u>Plaintiff's Allegations</u>

Plaintiff alleges he was a student at Xavier from 2007 to 2010 and provided certain personal identity information to Xavier, including his name, data of birth, Social Security number, and phone number. (CAC ¶ 96.)  Plaintiff received a copy of the notification letter in early March 2023. (*Id*. ¶ 100.)  Plaintiff generally alleges that Xavier "fail[ed] to implement and maintain reasonable data security measures" and, as a result, a "cybercriminal organization named Vice

---

[1] For purposes of this Motion only, Xavier accepts as true the factual allegations in Plaintiff's Complaint.

[2] A sample of Xavier's notification letters is attached to Xavier's Motion to Dismiss as Exhibit A ("Notice Letter"), which the Court may consider because it is referenced in and incorporated into the allegations in the Complaint. (*E.g.*, Compl. ¶¶ 17-24, 18 n.2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 332 (2007).

Society accessed and exfiltrated Plaintiff's and Class members' personally identifiable information ("PII"), including full names and Social Security numbers." (*Id.* ¶ 1.)

Plaintiff generally contends that he and the putative class have suffered or will suffer injures as a result of the Incident, including monetary damages, increased risk of future harm, emotional distress, improper disclosure of their PII, deprivation of the value of their PII, loss of the benefit of the bargain, and loss of time and expenses mitigating harms from the Incident. (*Id.* ¶¶ 144, 155, 171, 181.) In addition, Plaintiff contends that he spent time verifying the legitimacy of the notification letter, reviewing his accounts, and *intends* to take additional steps to mitigate harms. (*Id.* ¶ 101.) Further, Plaintiff vaguely alleges "he has suffered fraud, including being denied credit, which he learned that [sic] was due to a drop in his credit score that occurred in recent months." (*Id.* ¶ 102.) Plaintiff "*believes* that any such fraud is related to the [Incident] given the temporal proximity." (*Id.* ¶ 103, emphasis added.) Based on these thin allegations, Plaintiff asserts claims for negligence, invasion of privacy, breach of implied contract, and unjust enrichment.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and must dismiss a case if they determine, at any time, that subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is absent where a plaintiff lacks Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Importantly, the burden of proving the existence of subject matter jurisdiction rests on the invoking party. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) (citations omitted).

4

To have standing to sue, Plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted); *accord Green v. eBay Inc.*, No. 14–1688, 2015 WL 2066531, at *2-3 (E.D. La. May 4, 2015). Specifically, Plaintiff must "show that [he] personally ha[s] been injured, not that injury has been suffered by other unidentified members of the class." *Spokeo*, 136 S. Ct. at 1547 n.6 (citation and quotation marks omitted). And "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' ***and*** 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added). A "concrete" injury is "real," not "abstract"—"it must actually exist"—and a "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Id.* (citations omitted).

### B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see Ferrer v. Chevron Corp.*, 484

F.3d 776, 780 (5th Cir. 2007) (A court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

## IV.   LAW AND ARGUMENT[3]

### A.   Under Rule 12(b)(1), this Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks an Injury-in-Fact

This Court dismisses data incident class actions for lack of Article III injury-in-fact when, like here, plaintiffs fail to plead actual loss arising from the incident. *See infra Bradix v. Advance Stores Co., Inc.*, No. CV 16-4902, 2016 WL 3617717 (E.D. La. July 6, 2016);[4] *Green v. eBay Inc.*, No. CIV.A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015).[5]  This case is no different.

#### 1.   Plaintiff's Injury Theories—*Assumed Increased Risk of Future Harm, Manufactured Mitigation Costs, Diminished Value of PII*, and *Unexplained Event/Assumed Fraud*—Have Already Been Rejected by This Court Under Similar Circumstances

In *Green v. eBay*, a putative consumer class action arising from a cyberattack against eBay, this Court addressed injury theories that are nearly identical to the theories Plaintiff pleads here.[6] That decision, therefore, should be instructive.

---

[3] Plaintiff's pleading does not specify that any particular state's laws apply to his claims.  For purposes of this motion, Xavier addresses Plaintiff's claims under the substantive law of the forum (Louisiana) without conceding that Louisiana law applies to the entire putative class.  *See Mack Energy Co. v. Red Stick Energy, LLC*, No. 16-1696, 2019 4887410, at *9 (W.D. La. Oct. 2, 2019) (noting it's premature for a court to determine the governing law at the motion to dismiss stage where there is insufficient information to properly analyze the conflict-of-law factors).

[4] *See also Bradix v. Advance Stores Co., Inc.*, 226 So. 3d 523 (La. Ct. App. 2017) (on remand to state court for lack of Article III standing, trial court likewise dismissed for lack of standing and appellate court affirmed).

[5] *See also, infra, Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015).

[6] *Green*, 2015 WL 361771, at *1 (addressing allegations of "'economic damages,' 'actual identity theft, as well as (i) improper disclosures of their personal information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud due to eBay's failures; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; (iv) and deprivation of the value of their personal information'").

*Unexplained Event/Assumed Fraud.*  The plaintiff in *Green* alleged "actual identity theft" from the data incident.  2015 WL 2066531, at *6.  But this Court concluded that even alleged *actual* identity theft does not constitute an injury-in-fact without specific details of resulting monetary loss or other harm.  *Id.* at *4-5.  Plaintiff pleads even less: He "believes that as a result of the Data Breach, he has suffered fraud, including being denied credit, which he learned that [sic] was due to a drop in his credit score that occurred in recent months."  (CAC ¶ 102.)  This Court rejected similar alleged credit-type injuries in *Bradix v. Advance Stores Company*, where the Court held credit inquiries are not cognizable injuries and noted that courts addressing data breaches find no standing even in cases involving "actual attempts to use the stolen information." 2016 WL 3617717 at *4.

Likewise, in *Peters v. St. Joseph Services Corporation*, another district court in the Fifth Circuit rejected as insufficient for standing allegations of both actual and attempted unauthorized purchases on the plaintiff's credit card, attempted unauthorized access to her Amazon account, daily phone solicitations, and compromises of her email account and mailing addresses.  74 F. Supp. 3d at 857.  In *Peters*, the plaintiff pled that her specific instances of actual misuse and attempted misuse were "proximately caused" by the defendant.  *Id.*  But the *Peters* Court considered those allegations to be "conclusory" and held that they "fail[ed] to account for the sufficient break in causation caused by opportunistic third parties" and were not likely to be redressed by a favorable decision.  *Id.*

Again, Plaintiff pleads far less—that he merely "believes" that his credit score dropped and he was denied credit because of the Incident.  He pleads no facts supporting his belief or how some undescribed "fraud" impacted his credit score and can plausibly be linked to the Incident (other than an assumed temporal connection).  (*See* CAC ¶¶ 101-103.)  What's more, Plaintiff does not

7

rule out other potential reasons why his credit score changed.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324- 27 (11th Cir. 2012) (sustaining standing for only those plaintiffs who alleged actual misuse of their personal information ***and*** ruled out other plausible causes of the alleged misuse).

As the Court is probably aware, one's credit score is not static.  It can fluctuate almost daily based on myriad consumer factors.  Practically speaking, anyone who receives notice of a data incident can likely also point to a recent change in their credit score.  But mere coincidence cannot serve as an injury-in-fact.  Additional well-plead facts should be required to demonstrate some plausible connection to the Incident, and Plaintiff pleads none.  Regardless, Plaintiff still fails to plead any "quantifiable damage or loss" associated with his credit score change for this Court to redress, thus further negating standing.  *See Peters*, 74 F. Supp. 3d at 857.

Indeed, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."  *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976).  Thus, where, as here, the "Plaintiff[] fail[s] to allege that [he] or members of the putative class have suffered actual identity theft[,]" [his] "pleading speaks of possibilities and traffics in maybes."  *Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*, No. 2:19-cv-798-RAH-SMD (WO), 2020 WL 4016246, at *6 (M.D. Ala. July 16, 2020) (dismissing for lack of standing patients' complaint against their dentist for alleged injury following ransomware attack).

***Assumed Increased Risk of Future Harm and Manufactured Mitigation Costs.***  Lacking an actual injury, Plaintiff pleads fear of a hypothetical future one.  He assumes that because the Incident occurred, an increased risk of future identity theft automatically and assuredly follows. (CAC ¶¶ 85, 90-92, 107.)  This theory was rejected by this Court in *Green v. eBay*.  There, like

here, the assumed increased future risk of harm was not buttressed by any allegations to demonstrate that such harm was "certainly impending." 2015 WL 2066531, at *4.

The *Green* decision served essentially as a precursor to the United States Supreme Court's standing ruling in *TransUnion LLC v. Ramirez*, where the Court held, succinctly: "No concrete harm, no standing." 141 S. Ct. 2190, 2200 (2021). That case also involved purported injury from an increased future risk of harm related to personal information. The plaintiffs tried to show standing based on their fear that credit reports containing inaccurate personal information might be distributed to a third-party at some unknown time in the future. *See id.* at 2210. Fatal to their standing argument, the plaintiffs "did not demonstrate that the risk of future harm materialized" or "that the[y] . . . were independently harmed by their exposure to the risk itself." *Id.* at 2211. Plaintiff's allegations similarly fall short.

Moreover, Plaintiff pleads substantially identical allegations to the deficient ones in *Peters*, where the plaintiff "cite[d] reports from the . . . FTC to lend credibility to her fear that savvy thieves could potentially use her personal information to[] drain her bank account(s); make charges on her credit card(s) or on new cards fraudulently opened in her name; obtain false identification card; perpetrate tax, medical and insurance fraud; or develop phishing scheme over the internet." 74 F. Supp. 3d at 854. The plaintiff in *Peters*, like Plaintiff here, also pled that "fraudulent use of her personal information could go undetected for long periods of time—even 'years into the future'—and thus cause 'significant harm to [her] credit rating and finances.'" *Id.*; *cf.* CAC ¶¶ 72-78 (citing FTC recommendations), ¶¶ 85, 90, 144 (referring to damages allegedly flowing from the possibility of future and imminent harm through the dissemination of his PII and the increased risk of credit fraud or identity theft). In sum, these types of speculative and conclusory allegations

fail to plead harm that is "certainly impending," nor do they give rise to a "'substantial' risk of identity theft/fraud as Article III requires . . . ."  74 F. Supp. 3d at 854.

Understandably, if harm is not imminent, then steps to mitigate against it (including lost time or expended efforts) are not reasonable—and cannot constitute an injury-in-fact to confer standing to sue.  (*E.g.*, CAC ¶ 101.)  Otherwise, any effort to mitigate against any conceivable harm, no matter how remote or speculative, would grant access to the district courts.  That is why this Court and others have rejected this injury theory when unaccompanied by an actual or certainly impending injury.  *Green*, 2015 WL 20066531 at *5 ("[M]itigation expenses do not qualify as injury-in-fact when the alleged harm is not imminent.").[7]  Accordingly, Plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fear[] of hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 416.

**_Diminished Value of PII._**  The Court's reasoning for rejecting this theory in *Green* applies equally here: "Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach."  2015 WL  2066531 at *5, n. 59; *cf.* CAC ¶ 109 (alleging only that Plaintiff "suffered . . . diminution in the value of his PII").  Indeed, "general allegations that a plaintiff's personal information has diminished in value [due to a data incident] are not enough."  *Griffey v. Magellan Health, Inc.*, No. CV-20-01282, 2021 WL 4427065, at *4 (D. Ariz. Sept. 27, 2021) (Rule 12(b)(6) context).  In fact, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."  *Fero v. Excellus Health Plan, Inc*., 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017).

---

[7] *See, e.g., In re SuperValu, Inc*., 870 F.3d 763, 771 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury."); *see also Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 91 (2d Cir. 2017) (rejecting standing because plaintiff "pleaded no specifics about any time or effort that she herself has spent monitoring her credit").

And merely pleading that a market for Plaintiff's personal information allegedly exists (i.e., the dark web) and that his personal information allegedly is on it will not suffice.  *See Griffey*, 2021 WL 4427065, at \*5 (refusing to "recognize the 'dark web' as legitimate market by which individuals may sell their information").

### 2.   The Fifth Circuit Has Rejected the Overpayment Injury Theory

Plaintiff essentially alleges that he overpaid for tuition because, purportedly, an indeterminate portion of his college bill included an unspecified level of data security, which he did not get because the Incident occurred.  (CAC ¶ 168 ("Plaintiff . . . did not receive the full benefit of the bargain.").)  Notably, he provides no factual detail about his alleged overpayment, including whether *he personally* paid anything to Xavier.

Although not a data incident case, the Fifth Circuit addressed a similar overpayment-for-services theory of injury in *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016).  That case involved alleged overpayments for gym memberships in violation of the Texas Health Spa Act.  Like other courts in data incident cases have reasoned, the Fifth Circuit found no injury to confer standing because the defendant-gym "gave Plaintiffs exactly what they paid for: access to a gym."  Plaintiff's allegations similarly fail because he does not (and cannot) allege that he did not get what he paid for: a college education.  It's no surprise that courts nationwide routinely reject the overpayment theory.[8]

---

[8] *See, e.g., In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) ("Holmes paid for groceries, . . . [h]e did not pay a premium 'for a side order of data security and protection' . . . [b]ecause Holmes does not allege that any specific portion of his payment went toward data protection, he has not alleged a benefit conferred in exchange for protection of his personal information nor has he shown how SuperValu's retention of his payment would be inequitable."); *Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861 (D. Minn. 2015) ("Courts have generally found 'overpayment' theories insufficient to establish injury.") (collecting cases).

### 3.   Plaintiff Does Not Have Standing Based on Anxiety Without Physical Injury

Plaintiff alleges that he and putative class members have suffered or will suffer embarrassment, humiliation, frustration, and emotional distress as a result of the Incident.  (CAC ¶ 144.)  But, as pled, Plaintiff's emotional distress does not support Article III standing.

Known as the "impact rule," Louisiana generally does not allow recovery for emotional distress without a concomitant physical injury.  As stated by the Louisiana Supreme Court, "'if the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance.'"  *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 716 (E.D. La. 2009) (quoting *Moresi v. Dept. of Wildlife and Fisheries*, 567 So. 2d 1081, 1095 (La. 1990)).[9]  Plaintiff pleads no such companion physical injury here.

Moreover, to the extent Plaintiff seeks to recover for non-monetary emotional harm based on breach of contract under Louisiana law, he still fails to plead an injury-in-fact because he does not (and cannot) plead the existence of a contract that was intended to gratify a "nonpecuniary interest of which the defendants were aware or that the defendants intended to aggrieve the feelings of plaintiff."  *Id.* at 717.  Such contracts are meant "to satisfy an interest of a spiritual order" usually "pertaining to sentimental matters."  *Id.* at 717-18 (collecting cases).  In *Pinero*, this Court rejected

---

[9] "Louisiana courts occasionally find exceptions to this rule when there are special circumstances "which serve[] as a guarantee that the claim is not spurious.'"  *Id.* (quoting *Moresi*, 567 So. 2d at 1096; alterations in original).  *Moresi* highlighted a few examples: "*Graham v. Western Union*, 109 La. 1069, 34 So. 91 (1903) (allowing recovery for emotional damages resulting from the failure to deliver a telegraph to a mother announcing the impending death of her son); *Cooper v. Christensen*, 212 So. 2d 154 (La. Ct. App. 1968) (allowing recovery for mental disturbance after plaintiff witnessed an automobile crashing into her residence); *French v. Ochsner Clinic*, 200 So. 2d 371 (La.Ct.App.1967) (allowing recovery for mental anguish resulting from an unauthorized autopsy); *Grather v. Tipery Studios, Inc.*, 334 So. 2d 758 (La. Ct. App. 1976) (allowing recovery for photographer's negligence regarding wedding photographs)."  But none of these special circumstances are pled here, nor can they be.

the notion that a privacy policy at issue in a data incident class action was such a contract. Similarly, Plaintiff only pleads an implied agreement for data security.  Although Xavier disputes the existence of this implied agreement, any such agreement could hardly be considered "spiritual" or "sentimental."  (CAC ¶¶ 162-63.)  Further, Plaintiff must also plead "that the motivating factor behind defendant['s] breach was [its] desire to aggrieve [his] feelings" and that "the breach was '*calculated* to inflict grief, vexation, or inconvenience on the other party.'"  *Id.* at 718 (quoting 6 Saul Litvinoff La. Civ. L. Treatise § 6.16 (2d ed.)) (emphasis added).  Plaintiff does not (and cannot) plead these requisite allegations.

### 4. An Invasion of Privacy Does Not Support Standing

Finally, Plaintiff cannot rely on an invasion of privacy for standing because he fails to allege "unreasonable and serious" conduct of some kind that "interferes with another's privacy interest."  *Bradix*, 226 So. 3d at 530; *see Pinero*, 594 F. Supp. 2d at 721-22.  Absent such allegations, any resulting invasion of privacy injury is simply too abstract and will not confer standing to sue.  "Indeed, this theory of standing has been rejected in the data breach context where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure."  *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (no standing based on tort of public disclosure of private information); *see, e.g., C.C. v. Med-Data Inc.*, 2022 WL 970962 (D. Kan. Mar. 31, 2022) ("[P]laintiff alleges her data was 'uploaded to a public facing website[,]'" but "hasn't alleged a concrete harm resulting to his reputation from the publicity."); *In re Zappos, Inc.*, 108 F. Supp. 949, 962 n.5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury.").

***

In sum, Plaintiff's injury theories are not suitable substitutes for an injury-in-fact, and the Complaint should be dismissed for lack of standing and, therefore, subject matter jurisdiction under Rule 12(b)(1).  *See, e.g., Max-George v. Oath, Inc.*, No. 9:20CV237, 2022 WL 2307387, at *1 (E.D. Tex. June 27, 2022) (dismissing for lack of standing where plaintiff did not "allege[] he suffered any financial loss due to the data breaches").

### B. Under Rule 12(b)(6), Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

Because Plaintiff fails to sufficiently plead an injury-in-fact to demonstrate Article III standing, the Court need not address Xavier's Rule 12(b)(6) arguments.  Should the Court do so, Plaintiff's Complaint should still be dismissed for failure to state a viable claim for relief.

#### 1. Plaintiff Does Not Plausibly Plead Any Cognizable Loss from the Incident

Damages are an indispensable element of Plaintiff's claims for negligence, invasion of privacy, breach of implied contract, and unjust enrichment claims.[10]  Significantly, "the standard for alleging actual damages is generally higher than that for plausibly alleging injury in fact." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019), *appeal dismissed*, 969 F.3d 412 (D.C. Cir. 2020), *and on reconsideration in part*, No. 15-CV-00882 (CRC), 2021 WL 311000 (D.D.C. Jan. 29, 2021).  Because Plaintiff does meet the decidedly lower bar of pleading an injury-in-fact for standing, he does not plausibly plead a cognizable loss to sustain any of his claims for

---

[10] *See Miller v. Upper Iowa Univ.*, No 1:19-cv-00039, 2020 WL 882047, at *7 (W.D. La. Feb. 21, 2020) ("The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated."); *Pinero*, 594 F. Supp. 2d at 715 (For a negligence claim, "Plaintiff must show . . . actual damages."); *Carriere v. Bank of La.*, 702 So. 2d 648, 671 (La. 1996) (The elements of an unjust enrichment claim include:  "(1) there must be an enrichment; (2) there must be an impoverishment . . . ."); *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. Ct. App. 2011) (Breach of contract requires a showing that "the failure to perform resulted in damages to the obligee."), *writ denied*, 62 So. 3d 127 (La. 2011).

damages. Indeed, Plaintiff's alleged "damages" are not cognizable losses at all, but rather proposed remedies for which no compensable loss exists.

Moreover, under Louisiana law, damages must be proved with legal certainty and speculative damages—particularly in the data incident context—may not be recovered. *See F.D.I.C. v. Barton,* 233 F.3d 859, 864-65 (5th Cir.2000) (citing *Bourdette v. Sieward,* 107 La. 258, 31 So. 630 (1902); *Craig v. Burch,* 228 So. 2d 723, 731 (La. Ct. App.1969)). For instance, in *Pinero*, this Court held that a plaintiff's allegations that her personal information was accessed by an unauthorized party, without more, did not establish damages that were recoverable under Louisiana law. 594 F. Supp. 2d at 716. In *Ponder v. Pfizer, Inc.,* the Middle District of Louisiana held that plaintiff's allegations of "fear and apprehension of fraud, loss of money, and identity theft; the burden and cost of credit monitoring; the burden and cost of closing compromised credit accounts and opening new accounts; the burden of scrutinizing credit card statements and other statements for unauthorized transactions; damage to [ ] credit; loss of privacy, and other economic damages" failed to state a claim because the plaintiff did not allege any actual loss for which to recover damages. 522 F. Supp. 2d 793, 798 (M.D. La. 2007). Other Louisiana courts agree that speculative future losses flowing from a cyberattack are not cognizable and will not support damages under Louisiana law.[11]

Likewise, Plaintiff's claims fail because he does not allege a cognizable loss that the law is prepared to redress.

---

[11] *See, e.g., Melancon v. La. Office of Student Fin. Assistance*, 567 F. Supp. 2d 873, 874 (E.D. La. 2008) (finding the mere possibility that personal information may be at increased risk does not constitute actual injury sufficient to maintain a claim for negligence under the current state of Louisiana law"); *Bradix*, 226 So. 3d at 529 (finding that plaintiff's alleged damages of a third party using his information in the future were too speculative under Louisiana's less demanding standing bar); *Young v. St. Landry Par. Sch. Bd.*, 673 So. 2d 1272, 1276 (La. Ct. App. 1996) (affirming dismissal of invasion of privacy claim for failure to show actual damages).

### 2.  Plaintiff's Claims Suffer Additional Defects

#### a.  Plaintiff fails to plausibly plead causation to state a claim for negligence

Proximate cause is an indispensable element of his negligence claim, which is not satisfied when an intervening cause breaks the sequence of the alleged negligence.  *See Midkiff v. Watkins*, 52 So. 2d 573, 576 (La. Ct. App. 1951) (finding that the intervening acts of a thief were sufficient to break the sequence of defendant's alleged negligence).  Plaintiff cannot plausibly plead that his alleged damages (of which he has none) were proximately caused by Xavier, as opposed to criminal actors.  Regardless, Plaintiff can only speculate about a causal link between the Incident and any purported losses he may suffer in the future.  Such speculation based on a purely temporal connection does not constitute a plausible allegation that the Incident proximately caused Plaintiff's alleged "damages."  *See In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *25 (N.D. Ala. Sept. 2016).  Moreover, to avoid dismissal for failure to plead causation, a plaintiff must allege facts sufficient to rule out other causes, which Plaintiff also fails to do.  *See supra Resnick*, 693 F.3d at 1326–27.

#### b.  Plaintiff fails to plausibly plead the existence of an enforceable contract or breach thereof

Plaintiff contends that Xavier breached an implied contract to secure his personal information.  (CAC ¶¶ 161-166.)  Under Louisiana law, "[a]n implied in fact contract is one which rests upon consent implied from facts and circumstances showing mutual intention to contract." *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So. 2d 569, 573 (La. 1989).  "Consent to an obligation may be implied from action only when circumstances *unequivocally* indicate an agreement or when the law presumes it."  *Union Tex. Petrol. Corp. v. Mid La. Gas Co.*, 503 So. 2d 159, 165 (La. Ct. App. 1987), *writ denied sub nom. Union Tex. Petrol. Corp. v. Mid La.*, 506 So. 2d 1228 (La. 1987) (emphasis added).  Plaintiff fails to allege any facts showing mutual assent

to the terms of a contract for data security, consideration for such an agreement, or a breach of its terms.

All Plaintiff alleges is that he provided his personal information to Xavier in the student-university context.  (CAC ¶¶ 163-65.)  Nothing in the Complaint plausibly suggests that Plaintiff provided his personal data to Xavier for data security and paid for that service or that Xavier agreed to undertake such contractual obligation.  The reasonable inference is Plaintiff paid for and received the benefit of his bargain: an education.[12]  Not surprisingly, Plaintiff pleads no facts showing unequivocal mutual assent to data security.  Even if Plaintiff had some subjective expectation otherwise, his undisclosed subjective intent cannot create a mutually binding contract.  Louisiana law requires "facts and circumstances showing a mutual intention to create a contract," which Plaintiff does not plead.  *Okuarume v. Southern Univ. of New Orleans*, 245 So. 3d 1260, 1265 (La. Ct. App. 2018) (finding plaintiff's expectation that an implied contract was created was not enough under Louisiana law); *see also Franklin v. Regions Bank*, 37 F.4th 986, 994-95 (5th Cir. 2022) (finding no oral or implied contract notwithstanding contract between plaintiff and defendant pertaining to different services).

Additionally, Plaintiff alleges that Xavier breached their alleged contract by failing to take reasonable measures to protect his data.  But these allegations are too vague and indefinite to establish specific data security promises sufficient to form any agreement between the parties or show how such an agreement was breached.  Plaintiff's Complaint leaves unanswered critical

---

[12] *See, e.g., Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 862 (D. Minn. 2015) ("Plaintiff's consideration was for enhanced content and he received the benefit of that bargain—the enhanced content.  Therefore, security failures or misrepresentations relating to data security, even if true as alleged, cannot be a breach and thus cannot result in a breach-of-contract injury.  Plaintiff could not have 'overpaid' for the service he purchased because he received what he paid for."), *aff'd on other grounds*, 833 F.3d 903 (8th Cir. 2016).

questions of what exactly Xavier was supposed to do and what it allegedly did not do under the parties' purported data security agreement.

Further, Plaintiff's allegations of breach of an implied duty of good faith also fail. This duty "arises only in the context of performance of a contract." *Jones v. Honeywell Int'l Inc.*, 295 F. Supp. 2d 652, 671-72 (M.D. La. 2003). Because Plaintiff cannot plausibly plead a contract for data security with Xavier, no implied duty of good faith in the performance of a non-existent agreement arises. *Id.*; *see also Spillway Invs., L.L.C. v. Pilot Travel Ctrs. LLC*, No. Civ. A. 04-2451, 2005 WL 517498, at *7 (E.D. La. Feb. 22, 2005) (holding that without an enforceable contract, no covenant of good faith and faith dealing can be implied). Notwithstanding, even assuming Plaintiff could show an implied duty of good faith existed, he still could not show Xavier breached this duty. "A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith." *Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp. 1035, 1041 (E.D. La. 1989).

### c.  Plaintiff fails to plausibly plead a claim for invasion of privacy

Plaintiff claims that he had an expectation of privacy regarding his personal information, he was entitled to protection of this information against disclosure, and the unauthorized disclosure of this information is highly offensive to a reasonable person and amounts to an invasion of privacy. (CAC ¶¶ 148-150.) Invasion of privacy is an intentional tort, which requires an intentional act. *See Leger v. Spurlock*, 589 So. 2d 40, 43 (La. Ct. App. 1991); *see also Bazley v. Tortorich*, 397 So. 2d 475, 482 (La. 1981) (requiring a plaintiff to show that "the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did"). Allegations of lax data security for personal data are not enough. *See Miller*, 2020 WL 882047, at *7 (holding plaintiffs failed to state a claim for invasion of privacy based on allegations that defendants failed to maintain their employee files in a secure manner and

exposed their private information).  Plaintiff must plead that Xavier intentionally invaded his privacy, which he does not (and cannot) allege.

Under Louisiana law, the right of privacy encompasses four interests, only two of which are relevant here: (1) an unreasonable intrusion upon the plaintiff's physical solitude or seclusion; and (2) unreasonable public disclosure of private facts.  *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386, 1388–89 (La.1979); *Spellman v. Discount Zone Gas Station*, 975 So.2d 44, 47 (La. Ct. App. 2007).  Plaintiff's Complaint seems to conflate the two torts as one.  Nevertheless, Plaintiff cannot plausibly plead an unreasonable intentional intrusion into his private affairs or unreasonable intentional public disclosure of his private facts by Xavier based on the Incident.  In fact, the Complaint states the contrary—that he voluntary provided his personal information to Xavier (CAC ¶ 96), meaning no intrusion by Xavier; and that his personal information was subject to "unauthorized acquisition (*i.e.*, theft) by a third party" who perpetrated the cyberattack (CAC ¶¶ 1, 150), meaning no disclosure by Xavier.  Thus, Plaintiff fails to plead an act by Xavier that was "unreasonable and seriously interfere[d] with the [his] privacy interest."  *Bradix*, 226 So.3d at 530 (dismissing invasion of privacy claim based on data incident).

### d.  Plaintiff fails to plausibly plead a claim of unjust enrichment

Plaintiff's unjust enrichment claim cannot survive because he pleads other adequate remedies at law.  *See, e.g., Gen. Accident Ins. Co. of Am. v. Aggreko*, No. 11-cv-1682, 2012 WL 6738217, at *2 (W.D. La. Dec. 28, 2012) ("As Louisiana law makes clear, it is the mere existence of the breach of contract claims that render [sic] the unjust enrichment claims unavailable."); *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010) (finding plaintiff's allegations that he suffered harm as a result of negligent and tortious conduct of defendant "precluded [plaintiff] from seeking to recover under unjust enrichment"); *Gallant Invs., Ltd. v. Illinois Cent. R. Co.*, 7 So. 3d 12, 18 9 (La. Ct. App. 2009) ("[W]e conclude that any equitable

action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delictual action").

## V.    CONCLUSION

For the foregoing reasons, Xavier respectfully requests that the Court dismiss the Complaint for lack of injury-in-fact for purposes of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted, this 28th day of April 2023.

Respectfully submitted,

/s/ James M. Garner
JAMES M. GARNER (# 19589)
JOSHUA S. FORCE (# 21975)
GRANT G. BUTLER (# 40300)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C**
909 Poydras Street, 28th Floor
New Orleans, LA  70112
Telephone:  (504) 299-2100
Facsimile:  (504) 299-2300
jgarner@shergarner.com
jforce@shergarner.com
gbutler@shergarner.com

– and –

CHRISTOPHER A. WIECH
(*Pro Hac Vice Forthcoming*)
CHELSEA M. LAMB
(*Pro Hac Vice Forthcoming*)
**BAKER & HOSTETLER LLP**
1700 Peachtree St. N.E., Suite 2400
Atlanta, GA  30309
Telephone:  (404) 459-0050
Facsimile:  (404) 459-5734

20

cwiech@bakerlaw.com
clamb@bakerlaw.com

**ATTORNEYS FOR DEFENDANTS**